UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALVARO ROLANDO ACOSTA FLORES, <br><br> Plaintiff, <br><br> -v- <br><br> STUDIOLAB, LLC, <u>et</u> <u>al.,</u> <br><br> Defendants. | CIVIL ACTION NO. 24 Civ. 6345 (JGK) (SLC) <br><br> <u>**OPINION AND ORDER**</u> |

**SARAH L. CAVE,** United States Magistrate Judge.

## I.<u>INTRODUCTION</u>

Before the Court in this personal injury action arising out of injuries Plaintiff Alvaro Rolando Acosta ("Plaintiff") sustained while working at the Bridgehampton home of Defendant Ruth Miller ("Ruth") (<u>see</u> Dkt. No. 22),[1] is Plaintiff's motion for reconsideration of the Court's May 14, 2026 Order limiting the scope of Ruth's obligation to search for documents responsive to Plaintiff's Third Request for Production of Documents dated February 16, 2026 (the "Third Request"). (Dkt. No. 109 (the "Motion")). For the reasons set forth below, the Motion is **DENIED**.

## II.<u>BACKGROUND</u>

### A. <u>Factual Background</u>

On June 13, 2024, Plaintiff, while employed by UFO's Home Improvement Inc. ("UFO"), fell from scaffolding and was injured while performing construction work at Ruth's home in Bridgehampton (the "Premises"). (Dkt. Nos. 22 ¶¶ 12-13, 29-30, 89, 91; 110 at 3). Studiolab and

---

[1] Plaintiff also names as Defendants Studiolab, LLC ("Studiolab") and Slab Builders, LLC ("Slab"), who, with Ruth, we refer to as "Defendants." (Dkt. No. 22 ¶¶ 6-8).

Slab, of which Ruth's son Matthew is the sole member, were the general contractors for the work being done on the Premises. (Dkt. Nos. 22 ¶¶ 7-10, 17-19, 23-25, 34-35; 110 at 3). The construction work being done on the Premises included repairs to the roof, siding, deck, kitchen, and dining room. (Dkt. No. 110 at 4).

Ruth has owned the Premises since 2005 and owns residences in New York City and Florida. (Dkt. No. 110 at 4). She rented the Premises in 2020, for which she received income, but at her deposition denied ever listing the Premises for rent through a broker or agent. (Id.) Plaintiff claims to have learned through an investigation that the Premises "was in fact listed for rent both before and after [his] fall in 2024[,]" although he has not provided the Court with any examples of such listings. (Id.; Dkt. No. 118 at 3-5, 8, 10). Adam Miller, also Ruth's son, was a real estate broker with Compass Real Estate ("Compass") and communicated with other agents regarding rental of the Premises before Plaintiff's fall in 2024. (Dkt. Nos. 110 at 4; 118 at 5). According to Plaintiff, albeit without documentary support, Compass maintained "an active rental listing" for the Premises at a seasonal rate of $45,000.00 "from 2020 through at least February 3, 2025," when Ruth asked that the listing be removed. (Dkt. No. 110 at 4).

### B. Procedural Background

On August 22, 2024, Plaintiff filed the original Complaint, which named as defendants only Ruth and Studiolab. (Dkt. No. 1). Studiolab filed an answer to the Complaint, and Ruth filed a motion to dismiss (Dkt. Nos. 20-21), in response to which Plaintiff filed an Amended Complaint. (Dkt. No. 22 (the "Amended Complaint")). Plaintiff asserts claims for negligence (the "Negligence Claim"), and violation of New York Labor Law §§ 200, 240(1), and/or 241(6) (the "Labor Law Claim"). (Dkt. No. 22 ¶¶ 90-100). He seeks damages of $6 million. (Id. ¶¶ 92, 100).

2

Ruth later withdrew the motion to dismiss, and she, Studiolab, and Slab each filed answers to the Amended Complaint. (Dkt. Nos. 26; 30-31; 35; 37). Slab also filed a third-party complaint against UFO (Dkt. No. 38), which neither appeared nor responded and has been deemed in default. (Dkt. No. 59).

Pursuant to the Case Management Plan adopted by the Honorable John G. Koeltl on January 6, 2025, the deadline to complete fact discovery was May 23, 2025. (Dkt. Nos. 46-47 (the "CMP")). On March 6, 2025, Judge Koeltl referred the action to the undersigned for general pretrial supervision. (Dkt. No. 62). Thereafter, the Court held discovery conferences and issued rulings as to several discovery disputes between the parties. (Dkt. Nos. 63; 66; 67; 73; Dkt. minute entry dated Apr. 7, 2025, May 5, 2025). On September 8, 2025, the parties informed the Court that fact discovery was complete. (Dkt. No. 77). Plaintiff continued, however, to pursue compliance by various non-parties—real estate brokers—with subpoenas, and at Plaintiff's request, the Court extended the deadline to complete this nonparty discovery only to February 9, 2026. (Dkt. Nos. 82-93). Needless to say, that deadline came and went without the non-parties' full compliance and Plaintiff filed several letters regarding the status of enforcement of the subpoenas. (Dkt. Nos. 94-100; 102-104).

On February 16, 2026—more than five months after the parties had represented that fact discovery between them was complete and a week after the non-party discovery deadline—Plaintiff served on Defendants the Third Request, which sought "all emails, text messages, and any other forms of electronic communications from any application between" Ruth, Matthew, and/or Adam "regarding" the Premises "from January 1, 2020 to the present date." (Dkt. No. 110

3

at 5; see Dkt. No. 113 at 3). Ruth objected to the Third Request as untimely, vague, irrelevant, and overly burdensome. (Dkt. No. 113 at 3).

On March 20, 2026, Plaintiff filed a letter regarding the status of the non-parties' subpoena compliance and raising the parties' dispute over the Third Request. (Dkt. No. 102 at 2-3 (the "Mar. 20 Letter")). As to the latter, Plaintiff objected to Defendants' proposal to narrow their production to Adam and Matthew's business email addresses, reiterated her request for "all communications" between Ruth, Adam, and Matthew regardless of the capacity in which they were sent or the email address used, and requested a conference to resolve the dispute. (Id. at 3). Plaintiff did not cite any legal authority in support of his position or even reference the Labor Law Claim. (See id.) The Court ordered Plaintiff to provide a status letter by April 22, 2026 and scheduled a conference for April 29, 2026. (Dkt. No. 103).

On April 22, 2026, Plaintiff submitted a letter providing an update on the non-parties' compliance with the subpoenas and adding the following concerning the Third Request:

> Moreover, as the Court is aware, on February 16, 2025 [sic], we served upon defendants 'Plaintiff's Third Request for Production of Documents' seeking all emails, texts and all other forms of electronic communications between defendant Ruth Miller, Matthew Miller and Adam Miller, regarding the subject property from January 1, 2020 to the present date. We advised the Court in our March 20, 2026 letter of defendants' attempts to object to and limit the scope of our demands. Following the Court's March 23, 2026 Order, and to date, defendants have failed to respond to our demands. Accordingly, plaintiff's demands to defendants still stand and have not yet been responded to by defendants.

(Dkt. No. 104 at 2 (the "Apr. 22 Letter")). Again, Plaintiff neither cited any legal authority nor referenced the Labor Law Claim. (See id.) At Ruth's request, the Court adjourned the conference from April 29, 2026 to May 14, 2026 (the "Conference"). (Dkt. Nos. 105-106).

On May 14, 2026, the Court held the Conference. (Dkt. No. 118). During the Conference, Plaintiff explained for the first time that he expected Defendants to invoke the homeowner's exemption to the Labor Law Claim and argued that the full scope of the Third Request was appropriate because he believed that Ruth's communications with her sons would show that there was a "family business relationship, in which the three were engaged in renting the property[,]" which would contradict Ruth's testimony that "other than maybe one time seven or eight years ago, she never had any type of rental activities with" the Premises. (Dkt. No. 118 at 7-9). Plaintiff did not argue that construction at the Premises was relevant to its rental status. (See generally id.) In response, Ruth's counsel disputed what the non-parties' production showed about the rental status of the Premises and argued that the Third Request was untimely as well as unduly burdensome in seeking six years of communications between Ruth and her sons. (Id. at 12-15).

After hearing the parties' arguments, the Court sought to "figure out how we compromise on . . . a reasonable parameter" for Ruth's search to "make [it] manageable so that it can be done in a relatively short period of time" given that the parties were "four months past" their fact discovery deadline. (Id. at 18, 27). The Court explained that it would resolve the parties' dispute by requiring Ruth to search for emails with either of her sons "regarding rental of the [P]remises" during the periods April to September 2020 and January 1, 2024 (six months before Plaintiff's accident) to May 15, 2025 (the date of Ruth's deposition). (Id. at 23-25). The Court explained that "what matter[ed] is what was happening at the time the time the accident happened" and that it was "also taking into account proportionality and burden" as well as the expired fact

discovery deadline. (Id. at 27). Plaintiff's counsel repeatedly stated that he "understood" the Court's ruling and the reasons for it and voiced no further objection. (Id. at 27-28).

Following the Conference, the Court issued an order directing Ruth to "conduct a reasonable search for and produce all electronic communications between her and her two sons, Matthew and Adam Miller, regarding rental of the premises where Plaintiff was injured . . . during the time periods of (a) April 1, 2020 through September 30, 2020 and (b) January 1, 2024 through May 15, 2025. (Dkt. No. 108 (the "May 14 Order")).

On May 18, 2026, Plaintiff filed the Motion, in which he, for the first time, cites legal authorities to support his argument that the homeowner exemption to the Labor Law Claim does not apply to Ruth and that he needs communications between Ruth, Matthew, and Adam "from both before and after the incident" to determine whether Ruth "was intending to rent out the [P]remises once the construction work was completed and it was ready to be occupied." (Dkt. No. 110 at 7). He argues that in the May 14 Order it was "prejudicial" for the Court to exclude the three-year period before the accident and the year after the accident and communications regarding "construction/renovation work," which he claims would have shown the "reasons for the renovation/expansion of the house and garage apartment – and whether she [sic] and her sons' intentions were to rent out the property upon completion of the work [Plaintiff] was performing." (Id. at 5, 7-8). In support, he claims that the non-parties' productions in response to the subpoenas "clearly contradicted" Ruth's "deposition testimony regarding the rental of her property[,]" although he has provided neither examples of documents the non-parties produced nor any excerpts of Ruth's deposition testimony. (Id. at 8).

6

In opposition, Defendants point out that the May 14 Order required them to conduct a search for communications both from six months before and a year after Plaintiff's accident as well as the five month period between April and September 2020, which they describe as an "appropriately tailored timeframe" that will "be sufficient as it covers several months in the year 2020 when Plaintiff claims the rental listing was created, as well as the time frame of February 2025 when Plaintiff claims it was taken down, and the several months prior to and following[.]" (Dkt. No. 113 at 4).   Defendants add that, during the Conference, the parties "specifically discuss[ed] the issue" on which the Motion is based and argue that "[t]here is no data that was overlooked as the Plaintiff had the full and fair opportunity to make the very same argument made in" the Motion during the Conference.  (Id. at 6).  Finally, Defendants point out that Plaintiff has not shown any controlling law or new evidence, let alone an error that would require reconsideration.  (Id. at 6-7).

In reply, Plaintiff reframes his argument that in the May 14 Order, the Court "overlooked the purpose of the discovery request vis a vis the controlling New York law regarding the homeowners' exemption to liability under Labor Law sections 240(1) and 241(6), as well as the importance of the records that [the Court] excluded in [the May 14] Order."  (Dkt. No. 116 at 4).  He claims to need the full six-year span of communications between Ruth and her sons to allow him "and this Court, to view the full, complete picture and better understand [Ruth's] reasons behind the subject construction work, namely whether she and her sons intended to again rent out the [Premises] after the work [UFO] was performing in June 2024 was completed."  (Id. at 4).  He also renews his dispute that the Third Request was late or overly burdensome and emphasizes

the prejudice he will suffer if the Court requires Defendants to search for only two years, rather than six years, of communications about rental of the Premises.  (Id. at 6-7).

### III.DISCUSSION

#### A. Legal Standard

"Federal Rules of Civil Procedure 59(e) and 60(b) and Local Civil Rule 6.3 govern motions for reconsideration, depending on the type of order at issue and the relief sought."    Zayas v. Banks, No. 22 Civ. 7112 (KPF), 2024 WL 1657880, at *3 (S.D.N.Y. Apr. 17, 2024); see  Silverberg v. DryShips  Inc., No.  17  Civ.  4547  (SJF)  (ARL), 2018 WL 10669653, at *2 (E.D.N.Y. Aug. 21, 2018); United  States v. Real  Prop.  & Premises Located  at  249-20  Cambria  Ave.,  Little  Neck,  N.Y.  11362, 21 F. Supp. 3d 254, 259 (E.D.N.Y. 2014); Fed. R. Civ. P. 59(e) (motion to alter or amend judgment), 60(b) (motion for relief from judgment or order); Local Civ. R. 6.3 (motion for reconsideration).[2]  All reconsideration motions are subject to a "strict" standard, Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995), and will be granted "only when the movant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"    SEC v. Gottlieb, No. 98 Civ. 2636 (LAP), 2021 WL 5450360, at *2 (S.D.N.Y. Nov. 22, 2021) (quoting Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013)).

"The standards for relief under Local Civil Rule 6.3 and Rule 59(e) are 'identical.'" Ramirez v. United  States, No.  05  Civ.  4179  (SAS),  et  al., 2013 WL 247792, at *1 (S.D.N.Y. Jan. 22, 2013).  "Local Civil Rule 6.3 requires that a party seeking reconsideration set

---

[2] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

forth 'the matters or controlling decisions which counsel believes the Court has overlooked,' and such a motion shall only be granted if the Court determines that the factual matters or controlling precedent was, in fact, overlooked, 'on the underlying motion and that would have changed its decision.'"  Yelle v. Mount St. Mary Coll., No. 18 Civ. 10927 (PMH), 2021 WL 311213, at *2 n.1 (S.D.N.Y. Jan. 29, 2021) ("Yelle I"), aff'd sub nom., Yelle v. Mount Saint Mary Coll., No. 21 Civ. 480, 2022 WL 1715979 (2d Cir. May 27, 2022) (summary order) ("Yelle II").  The decision to grant or deny a motion for reconsideration is "within 'the sound discretion of the district court.'" Premium Sports Inc. v. Connell, No. 10 Civ. 3753 (KBF), 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) (quoting Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009)).

### B.  Application

Plaintiff has not demonstrated under Rules 59(e) or 60(b) an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice, nor has he shown that the Court "in fact, overlooked" factual matters or controlling precedent that would have changed the discovery ruling in the May 14 Order.  Yelle, 2021 WL 311213, at *2 n.1.  Accordingly, the Motion is denied.

First, Plaintiff does not, and could not, argue that there has been an intervening change of law or that he has received new evidence since the May 14 Order that warrants reconsideration, but instead complains of the prejudice to him if he does not get everything he wants in the Third Request.  (Dkt. Nos. 110 at 5, 7-8; 116 at 6-7).  The problem with seeking reconsideration on that basis is that, during the Conference, the Court fully heard his arguments as to why he was entitled to six years of Ruth's communications, and, balanced against her arguments about relevance and burden, rejected Plaintiff's argument and narrowed the scope of

Ruth's obligation to search for communications responsive to the Third Request to periods both before and after his accident. (Dkt. Nos. 108; 118 at 3-29). His arguments in support of a broader search scope having been made and rejected, the Motion is not a mechanism to relitigate this issue. See Analytical Survs., Inc. v. Tonga Ptrs., L.P., 684 F.3d 36, 52 (2d Cir. 2012) (explaining that motion for reconsideration is not "a vehicle for relitigating old issues"); Humphreys v. N.Y. City Health and Hospitals Corp., No. 16 Civ. 9707 (VSB), 2024 WL 4711100, at *2-3 (S.D.N.Y. Nov. 7, 2024) (holding that arguments already made and rejected did not provide a basis for reconsideration).

Second, to the extent that Plaintiff now has padded the Motion with an extensive discussion of the ins-and-outs of the homeowners' exemption to his Labor Law Claim, the adage, "too little too late" aptly applies. See Yelle I, 2021 WL 311213, at *5 ("To the extent Plaintiff seeks to introduce new arguments and case law not previously presented to the Court, that approach is equally unavailing."). In neither the Mar. 20 Letter, the Apr. 22 Letter, nor the Conference did Plaintiff support any of his arguments about the proper scope of the Third Request with any citations to controlling authority. (Dkt. Nos. 102; 104; 118). That he, having been denied everything he wanted in the Third Request, now attempts to lay out a legal framework supporting the breadth of the Third Request is not a basis for reconsideration. See Analytical Survs., 684 F.3d at 52 (explaining that motion for reconsideration is not a chance for "presenting the case under new theories"); Humphreys, 2024 WL 4711100, at *2 (denying reconsideration based on argument that plaintiff could have raised earlier). There is no reason why Plaintiff could not have presented these legal arguments in the first instance and provided the Court with a fuller record on which to consider the discovery dispute; the Court cannot have

overlooked arguments and authorities that Plaintiff never presented.  See Berg v. Kelly, 343 F. Supp. 3d 419, 424 (S.D.N.Y. 2018) (explaining that party cannot make a new argument on reconsideration "it could readily have raised when the underlying issue was being briefed but chose not to do so").

Third, even if Plaintiff had presented some modicum of legal argument in the Mar. 20 or the Apr. 22 Letters or different arguments at the Conference, the Court's ruling in the May 14 Order would not have been different.  Had Plaintiff timely served the Third Request—instead of almost five months after fact discovery between the parties was complete (Dkt. No. 77)—Ruth still made valid objections to Plaintiff's request for six years of communications about the Premises.  (Dkt. No. 118 at 11-15).  Instead of rejecting the Third Request as untimely—which would have been appropriate—the Court steered a middle path between the parties' positions to balance Plaintiff's need for information about the renting of the Premises with the burden on Ruth of searching through years' worth of communications with her sons as well as the concomitant delay in progressing this action toward a resolution.  (Dkt. No. 118 at 23, 25-26). The outcome of that balance was to require Ruth to search for communications concerning rental of the Premises (i) six months before Plaintiff's accident and one year after, and (ii) across the five-month period in 2020 when Ruth admitted to having rented the Premises.  (Dkt. No. 108). In neither the Mar. 20 nor the Apr. 22 Letters nor during the Conference did Plaintiff provide any evidence to show that this nearly-two-year span of communications would miss relevant communications about rental of the Premises.  Indeed, even now, despite having the non-parties' productions, Plaintiff provides no example of the rental of, or even a discussion about possibly renting, the Premises, outside the time periods in the May 14 Order.  In short, Plaintiff has

demonstrated no basis on which to conclude that we would have reached a different decision in the May 14 Order.  See Johnson v. Killian, No. 07 Civ. 6641 (NRB), 2009 WL 1787724, at *1 (S.D.N.Y. June 23, 2009) (denying motion for reconsideration where plaintiffs failed to show controlling decisions or factual matters "that, if examined, might reasonably have led to a different result").

### IV.CONCLUSION

For the reasons set forth above, the Reconsideration Motion is **DENIED.**  The Clerk of Court is respectfully directed to close Dkt. No. 109.

Dated:       New York, New York
             June 15, 2026                              SO ORDERED.

SARAH L. CAVE
United States Magistrate Judge

12