UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALVARO ROLANDO ACOSTA FLORES,

Plaintiff,

-v-

STUDIOLAB, LLC, et al.,

Defendants.

CIVIL ACTION NO. 24 Civ. 6345 (JGK) (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Before the Court in this personal injury action arising out of injuries Plaintiff Alvaro Rolando Acosta ("Plaintiff") sustained while working at the Bridgehampton home of Defendant Ruth Miller ("Ruth") (see Dkt. No. 22),[1] is Plaintiff's request that Ruth produce tax records for the years 2020–2025. (Dkt. Nos. 153; 156 (the "Request")). For the reasons set forth below, the Request is **GRANTED IN PART** and **DENIED IN PART**.

## II. BACKGROUND

We incorporate the factual and procedural background set forth in our Opinion and Order dated June 15, 2026. See Acosta Flores v. StudioLab, LLC, No. 24 Civ. 6345 (JGK) (SLC), 2026 WL 1724226, at *1–3 (S.D.N.Y. June 15, 2026) ("Acosta I"). As is relevant to the Request, the parties dispute the extent to which Ruth rented the Premises between 2020 and 2025 for purposes of

[1] Plaintiff also names as Defendants Studiolab, LLC ("Studiolab") and Slab Builders, LLC ("Slab"), who, with Ruth, we refer to as "Defendants." (Dkt. No. 22 ¶¶ 6–8).

determining whether the homeowner exemption applies to the Labor Law Claim.[2] See id. at *2–3.[3]

On September 5, 2025, the parties informed the Court that fact discovery was complete. (Dkt. No. 76; see Dkt. No. 77). During fact discovery, Ruth was deposed and admitted that she rented the Premises in the summer of 2020. (See Dkt. No. 154 at 9). The Court subsequently ordered her to produce communications between herself and her sons regarding rental of the Premises from April 1, 2020 to September 30, 2020, and January 1, 2024 to May 15, 2025, and provide declarations concerning the scope of her search for documents. Acosta I, 2026 WL 1724226, at *3. (See Dkt. Nos. 108 ¶ 1; 128 ¶ 3). The Court granted Plaintiff's request, based on information produced by non-party real estate agencies after the close of fact discovery, to depose Ruth's son Adam but denied Plaintiff's request to reopen Ruth's deposition. (Dkt. No. 147 ¶¶ 1, 6).

In a joint status letter dated September 28, 2026 — more than one year after discovery was supposedly complete — Plaintiff made the Request, which seeks the portions of Ruth's federal and state tax filings for 2020 to 2025 "that identify rental income, rental losses, depreciation, or other tax treatment attributable to same." (Dkt. No. 151 at 1 (the "Tax Records")). Plaintiff asserted that the Tax Records are "directly relevant" to Ruth's invocation of "the homeowner exemption" and "relevant/proportional to the needs of the case[,]" and contain information "not obtainable from an equally reliable source." (Id. at 1). Ruth objected to the

[2] See Chowdhury v. Rodriguez, 57 A.D.3d 121, 126 (2d Dep't 2008) (explaining that N.Y. Labor Law §§ 240(1) and 241(6) exempt from liability "owners of one and two-family dwellings who contract for but do not direct or control the work").

[3] Capitalized terms have the same meaning as in Acosta I.

Request "as duplicative, unduly burdensome[,] and unnecessary." (Id. at 2). Following a conference with the parties on September 29, 2026 (the "Sept. 29 Conference"), the Court permitted Plaintiff and Ruth to file letters concerning the Request. (Dkt. Nos. 152 ¶¶ 3–4; 154 at 3–12; see minute entry dated Sept. 29, 2026).

On October 5, 2026, Plaintiff filed his letter, to which he attached three documents, requesting Ruth's tax records for 2021 (not 2020) to 2025. (Dkt. No. 153). The first document is an email from Ruth to a real estate agent dated November 25, 2020, in which she seeks to list the Premises for rent "for 10k a month or best ofer [sic][,]" in response to which the agent stated that he had spoken to Ruth and directed a colleague to "put a monthly rate of $10k per month starting immediately through May. And to reactivate June July and August rates. [S]ame rate numbers for 2021." (Dkt. No. 153-1 (the "Nov. 2020 Email")). The second document is an undated rental listing, which states that the Premises were "Temp Off Market *Private" and were rented from May 28, 2021 to September 6, 2021 for $125,000. (Dkt. No. 153-2 (the "Listing")). The third document is a series of emails dated July 26, 2022, in which a renter inquires about the Premises "from August through Labor Day[,]" in response to which the real estate agent states that "Owner confirmed unfortunately those dates are now spoken for." (Dkt. No. 153-3 (the "July 2022 Emails")). Plaintiff argues that the Nov. 2020 Email, the Listing, and the July 2022 Emails (together, the "Non-party Documents") "establish that, despite [Ruth's] testimony to the contrary, she did, in fact, also rent the property subsequent to 2020, and further, that she listed the property on MLS with the intention of renting it from 2020 to 2025." (Dkt. No. 153 at 1). Plaintiff posits that if Ruth "represented to taxing authorities that the [] [P]remises generated rental income, took a deduction for improvements, or reported that it was a business venture"

would "bear directly upon her defense in this case — that the [P]remises were maintained solely as a private residence for her own use." (Dkt. No. 153 at 2). Therefore, Plaintiff argues, the Tax Records are relevant under Federal Rule 26(b)(1) to the "dispositive issue" of the applicability of the homeowner exemption to Plaintiff's Labor Law Claim. (Id.)

On October 14, 2026, Ruth filed her letter in which she acknowledges renting the Premises in 2020 but asserts that the Non-party Documents "do not actually show that the [] [P]remises was ever rented out from 2021 to present." (Dkt. No. 157 at 1). She points to the disclaimer on the Listing that the data was "NOT guaranteed accurate" as undermining Plaintiff's assertion that the Premises were rented after 2020. (Dkt. No. 157 at 1; see Dkt. No. 153-2). As to the July 2022 Emails, Ruth asserts that the agent's statement that the Premises were "spoken for" is "not proof of rental" but in fact demonstrates that she "refused an opportunity to rent the premises out." (Dkt. No. 157 at 2; see Dkt. No. 153-3). Finally, Ruth submits an affidavit from her accountant who, she claims, "makes it unequivocally clear that there is no rental income or revenue reflected on any tax returns for rental" of the Premises from 2021 to 2025. (Dkt. No. 157 at 2; see Dkt. No. 157-1 (the "Affidavit")).

On October 14, 2026, Plaintiff filed what the Court permitted to serve as a reply letter, objecting to the Affidavit but also using it as a basis to demand Ruth's Tax Records from 2020 through 2025. (Dkt. No. 156; see Dkt. No. 159).

## III. DISCUSSION

### A. Legal Standard

#### 1. Scope of Discovery

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). In deciding whether discovery is proportional to the needs of the case, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. "[T]he court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative . . .; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Of course, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "A district court has broad discretion to determine the scope of discovery." Roman Catholic Diocese of Rockville Ctr., N.Y.

v. Arrowood Indemn. Co., No. 20 Civ. 11011 (JLR), 2022 WL 17593312, at *4 (S.D.N.Y. Dec. 13, 2022) (citing Crawford-El v. Britton, 523 U.S. 574, 598 (1998)).[4]

### 2. Income Tax Returns

"Although tax returns are not privileged documents, [c]ourt[s] are reluctant to order their discovery in part because of the private nature of the sensitive information contained therein, and in part from the public interest in encouraging the filing by taxpayers of complete and accurate returns." Chen v. Republic Rest. Corp., No. 07 Civ. 3307 (LTS) (RLE), 2008 WL 793686, at *2 (S.D.N.Y. Mar. 26, 2008). To balance these concerns against liberal discovery under Rule 26(b)(1), a court may compel production of tax returns only if two criteria are met: "(1) the returns must be relevant to the subject matter of the action and (2) there must be a compelling need for the returns because the information is not otherwise readily obtainable." Carmody v. Vill. of Rockville Ctr., No. 05 Civ. 4907 (SJF) (ETB), 2007 WL 2042807, at *2 (E.D.N.Y. July 13, 2007); accord Ellis v. City of New York, 243 F.R.D. 109, 111–12 (S.D.N.Y. 2007). "[T]he party seeking discovery of the income tax returns bears the burden of demonstrating relevancy." Carmody, 2007 WL 2042807, at *2.

## B. Application

As an initial matter, in analyzing the Request, we decline to consider the Affidavit. (Dkt. No. 157-1). During the Sept. 29 Conference, Ruth's counsel made no mention of her accountant, let alone requested permission to submit the Affidavit as an alternative to producing the Tax Records. (Dkt. No. 154 at 3–12). As noted above, fact discovery is long since closed, so the tender of the Affidavit — which, as Plaintiff notes, raises more questions than it answers (Dkt. No. 156

[4] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

at 1–2) — is untimely and will only lead to further delay of the resolution of this action. Accordingly, we do not consider the Affidavit in our analysis of the Request.

Turning to the first factor above, relevance, we find that Plaintiff has demonstrated the relevance of the Tax Records, but only for 2021 and 2022. As noted above, it is undisputed that Ruth rented the Premises in 2020 (Dkt. No. 154 at 9), so no further discovery is needed with respect to 2020. See Lynch v. City of New York, No. 16 Civ. 7355 (LAP), 2021 WL 5140728, at *2 (S.D.N.Y. Nov. 4, 2021) (noting that court "must limit the frequency or extent of discovery" that is "unreasonably cumulative or duplicative . . ."). The Non-party Documents do suggest, however, that the Premises were rented in 2021 and 2022. (See Dkt. Nos. 153-1–153-3). The Listing indicates that the Premises were rented from May to September 2021 for $125,000. (Dkt. No. 153-2). The July 2022 Emails indicate that the Premises were "spoken for" during August 2022 — that might mean that Ruth was staying there, or it could mean that the Premises were rented. (Dkt. No. 153-3). Because the Non-party Documents show, at a minimum, an ambiguity about whether the Premises were rented in 2021 and 2022, Plaintiff has met his burden of showing that the Tax Records for 2021 and 2022 are relevant. (See Dkt. Nos. 153-1–153-3). The Non-party Documents say nothing about periods after 2022, however, and, accordingly, Plaintiff has not met his burden of showing the relevance of Tax Records for 2023, 2024, or 2025. See Trilegiant Corp. v. Sitel Corp., 272 F.R.D. 360, 368 (S.D.N.Y. 2010) (denying request for tax returns where relevance was "attenuated" and other documents provided adequate information).

Considering the second factor, Plaintiff has shown a compelling need for the Tax Records for 2021 and 2022 because the information is not otherwise obtainable. Despite Ruth's insistence that she rented the Premises only in 2020, there is at least some information showing

that the Premises were rented in 2021 and may have been rented in 2022. (Dkt. Nos. 153-2–153-3). That information comes not from Ruth, who attested that she no longer has communications from that period (Dkt. No. 148 at 9), but from the Non-party Documents. (Dkt. No. 154 at 3–4). The Court declined to reopen Ruth's deposition (Dkt. No. 147 ¶ 1), and Plaintiff has not renewed that request. At the Sept. 29 Conference, the Court inquired about other types of documents that might answer the question about other rentals, but Ruth's counsel offered no alternatives. (Dkt. No. 154 at 8–9). To the extent that Ruth has offered the Affidavit as an alternative source, the Court has declined to accept it for the reasons set forth above. The most efficient way to resolve once and for all the question of whether Ruth rented the Premises in 2021 or 2022 is simply to have her produce the relevant portions of her Tax Records for those years. See 287 Franklin Ave. Res. Ass'n v. Meisels, No. 11 Civ. 976 (KAM) (JO), 2012 WL 1899222, at *8 (E.D.N.Y. May 24, 2012) (affirming order compelling production of only rental income information in tax-related documents). The Court further narrows the scope of what Ruth must produce to only those portions of her Tax Records for the years ended December 31, 2021 and December 31, 2022 that reflect (i) rental income; (ii) rental losses; or (iii) deductions for improvements on the Premises relating to their rental. All other portions may be redacted.

## IV. CONCLUSION

For the reasons set forth above, the Request is **GRANTED IN PART** and **DENIED IN PART**. By **November 6, 2026**, Ruth shall produce those portions of her federal and state income tax returns for the years ended December 31, 2021 and December 31, 2022 that reflect (i) rental income; (ii) rental losses; or (iii) deductions for improvements on the Premises relating to their

rental, and file a letter confirming that she has done so. On receipt of that letter, the Court will deem all fact discovery closed.

Dated: New York, New York
October 21, 2026

SO ORDERED.

SARAH L. CAVE
United States Magistrate Judge